*Pro Se 7 2016*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

SETONDJI VIRGILE NAHUM

　　　　　　　　　　　　Plaintiff(s),
v.

LMI AEROSPACE

Brandy Hadgedorn

Beverly Green,

Tad Dewalt,

　　　　　　　　　　　　Defendant(s).

CASE NO. _____
[to be filled in by Clerk's Office]

COMPLAINT FOR EMPLOYMENT DISCRIMINATION

Jury Trial: ☐ Yes  ☒ No

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 1

Pro Se 7 2016

## I. THE PARTIES TO THIS COMPLAINT

A. Plaintiff(s)

*Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.*

| | |
|---|---|
| Name | SETONDJI VIRGILE NAHUM |
| Street Address | 20221 Aurora Ave N. # 106 |
| City and County | Shoreline and King |
| State and Zip Code | Washington and 98133 |
| Telephone Number | 206-595-6913 |

B. Defendant(s)

*Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.*

Defendant No. 1

| | |
|---|---|
| Name | LMI Aerospace |
| Job or Title *(if known)* | |
| Street Address | 6325 Avantha Dr. |
| City and County | Washington, Franklin |
| State and Zip Code | Missouri and 63090 |
| Telephone Number | 636-231-4200 |

Defendant No. 2

| | |
|---|---|
| Name | Brandy Hadgedorn |
| Job or Title *(if known)* | Human Resource Manager |
| Street Address | 6325 Avantha Dr. |
| City and County | Washington, Franklin |
| State and Zip Code | Missouri and 63090 |
| Telephone Number | 636-231-4200 |

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 2

Pro Se 7 2016

Defendant No. 3

| | |
|---|---|
| Name | Beverly Green |
| Job or Title *(if known)* | Interim Quality Manager |
| Street Address | 6325 Avantha Dr. |
| City and County | Washington, Franklin |
| State and Zip Code | Missouri and 63090 |
| Telephone Number | 636-231-4200 |

Defendant No. 4

| | |
|---|---|
| Name | Tad Dewalt |
| Job or Title *(if known)* | General Manager |
| Street Address | 6325 Avantha Dr. |
| City and County | Washington, Franklin |
| State and Zip Code | Missouri and 63090 |
| Telephone Number | 636-231-4200 |

C.   Place of Employment

The address at which I sought employment or was employed by the defendant(s) is:

| | |
|---|---|
| Name | LMI Aerospace |
| Street Address | 6325 Avantha Dr. |
| City and County | Washington and Franklin |
| State and Zip Code | Missouri and 63090 |
| Telephone Number | 636-231-4200 |

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 3

Pro Se 7 2016

## II.   BASIS FOR JURISDICTION

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

- ☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

    *(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

- ☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

    *(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

- ☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.
    *(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

- ☒ Other federal law *(specify the federal law)*:

    Section 1981 of The Federal Civil Rights Acts of 1866

- ☐ Relevant state law *(specify, if known)*:

- ☐ Relevant city or county law *(specify, if known)*:

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 4

*Pro Se 7 2016*

### III. STATEMENT OF CLAIM

*Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.*

_____

_____

_____

**Claim 1:** Racial Discrimination

**Basis of Jurisdiction: Title VII of the Civil Rights Act of 1964**

**Section 1981 of The Federal Civil Rights Acts of 1866**

The "Pro Se" Plaintiff is an African/Black plaintiff who accepted an offer of employment from LMI Washington as a Manufacturing Engineer on December 31st, 2019. His employment started on March 2nd, 2020 and his employment was wrongfully and abruptly terminated on May 22nd, 2020 through a sudden meeting held by Tad De Walt, Brandy Hadgedorn and Beverly Green. No reason, justification or explanation was provided to the plaintiff for this termination. Instead, the plaintiff was instructed to sign a severance/termination letter and he promptly declined. Prior to this role, Setondji V. Nahum held a position of Tools and Process Engineer I with SAFRAN Labinal, a position of Manufacturing Engineer with Sikorsky Aircraft/Lockheed Martin and a position of Manufacturing Industrial Engineer II with the Boeing Company. Setondji V. Nahum holds a Bachelor of Science in Aeronautical and Astronautical Engineering from the University of Washington and was pursuing a Master of Science in Aeronautics from Embry-Riddle Aeronautical University with a present a 4.0 GPA.

The African/Black plaintiff never actually had the opportunity to even start the job/position for which he was hired or agreed to per employment offer letter and hiring contract.

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 5

Instead, the African/Black plaintiff was requested from day 1 to assist in a lower and different role as an interim until the position is filled. This different role was characterized by long standing quality issues, lack of traceability and process non-compliance issues dating as far back as 3 years before the arrival of the plaintiff. Setondji never understood why other white employees at the company could not have taken on this role while he focusses on getting acquainted with the company and completing tasks within the scope of the position for which he was actually hired. The "Pro Se" plaintiff was subjected to unreasonably stricter levels of scrutiny than other white employees. Here, attempts were made to blame and penalize the plaintiff for relevant engineering and manufacturing feedback he provided. Irrelevant, inaccurate and abusive technical performance issues were raised against the plaintiff and attempts were incorrectly made to denigrate genuine feedback from the plaintiff. These white employees will change work input data after completion of analysis and issuance of non-conformance notifications and corrective actions in an attempt to discredit the African/Black employee. Meanwhile when the African/Black employees would regularly correct engineering errors and assumptions from white employees which included senior management at the company, no such technical performance issues was raised about these white employees. The "Pro Se" plaintiff was also treated differently than other white employees as it pertains to an evaluation of production issues, report of work occurrences and evaluation of employees' actions. In contrast to other white employees, the African/Black plaintiff was subjected to false and unfounded accusations. Not only were other white employees not requested to clean up the type of quality issues that the plaintiff was being required to complete, but also was the plaintiff being unfairly blamed for quality and system issues that were ironically being caused by other parties and being assigned to the plaintiff for the determination of a solution. The plaintiff was being a subject of sabotage, theft, and incomprehensible sudden displacement of necessary work materials. Other white

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 6

*Pro Se 7 2016*

employees were meddling with critical work input data after the completion of analysis and issuance of corrective action by the plaintiff. Moreover, work data being entered into a company database were being reverted and conveniently highlighted as issues.

The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☒ Termination of my employment.
- ☐ Failure to promote me.
- ☐ Failure to accommodate my disability.
- ☒ Unequal terms and conditions of my employment.
- ☐ Retaliation.
- ☐ Other acts *(specify)*:  Wrongful Termination

A. It is my best recollection that the alleged discriminatory acts occurred on date(s)

From 03/02/2020 to 05/22/2020

B. I believe that defendant(s) *(check one)*:

- ☒ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

C. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☒ race
- ☐ color
- ☐ gender/sex
- ☐ religion
- ☐ national origin

*Pro Se 7 2016*

☐ age *(year of birth)*     *(only when asserting a claim of age discrimination.)*

☐ disability or perceived disability *(specify disability)*

D. The facts of my case are as follows. Attach additional pages if needed.

**Facts for Racial Discrimination Claim:**

**Basis for Jurisdiction:** Title VII of the Civil Rights Act of 1964

Section 1981 of The Federal Civil Rights Acts of 1866

The "Pro Se" Plaintiff is an African/Black plaintiff who accepted an offer of employment from LMI Washington as a Manufacturing Engineer on December 31st, 2019. His employment started on March 2nd, 2020 and his employment was wrongfully and abruptly terminated on May 22nd, 2020 through a sudden meeting held by Tad De Walt, Brandy Hadgedorn and Beverly Green. Prior to this role, Setondji V. Nahum held a position of Tools and Process Engineer I with SAFRAN Labinal, a position of Manufacturing Engineer with Sikorsky Aircraft/Lockheed Martin and a position of Manufacturing Industrial Engineer II with the Boeing Company. Setondji V. Nahum holds a Bachelor of Science in Aeronautical and Astronautical Engineering from the University of Washington and was pursuing a Master of Science in Aeronautics from Embry-Riddle Aeronautical University with a present a 4.0 GPA.

Setondji V. Nahum was satisfactorily performing the interim quality role that the company forced him into and requested that he temporarily filled. Setondji successfully highlighted and resolved multiple engineering and manufacturing issues through problems presented to him through quality problems. When other departments such as contract, customer service, and accounting reported issues pertaining to data entry into a company database,

Setondji not only took it upon himself to research and resolve the issue but also investigated the occurrences and communicated to these teams and the company's General Manager that the database was corrupted and data entered was being automatically deleted. Setondji provided specific cases and provided print screen to highlight these strange occurrences.

The African/Black plaintiff never had the opportunity to even start the job/position for which he was hired or agree to as per employment offer and employment contract. Instead, the African/Black plaintiff was requested from day 1 to assist in a lower and different role as an interim until the position is filled. The role was characterized by long standing quality issues, lack of traceability and process compliance issues dating as far back as 3 years before the arrival of the plaintiff. Setondji never understood why other white employees at the company could not have taken on this role while he focusses on getting acquainted with the company and completing tasks within the scope of the position for which he was actually hired. The interim position he was technically forced into consisted cleaning up numerous issues (Red Tags) with no traceability. None of Setondji V. Nahum never understood why none of his white co-workers were asked to work these specific issues and specific quality problem cases. Setondji cleaned up the backlog of issues that were sitting prior to his arrival within 3 weeks only to be furlough immediately after. He was asked to return to work on April 20th, 2020 after approximately 3 weeks of furlough within which he was told by the general manager and human resource personnel to file for unemployment. Upon his return, yet another backlog of issues with no traceability was piled up for his review. Setondji yet again cleaned up these issues and finalized a backlog tracking sheet to address traceability, manufacturing, and engineering issues.

Throughout his employment, the African/Black plaintiff was treated very differently from other white employees. Not only were other white employees not requested to clean up the type of quality issues that the plaintiff was being required to complete, but also was the plaintiff being

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 9

unfairly blamed for quality and system issues that were ironically being caused by other parties and being assigned to the plaintiff for the determination of a solution. The plaintiff was being a subject of sabotage, theft, and incomprehensible sudden displacement of necessary work materials. Other white employees were meddling with critical work input data after the completion of analysis and issuance of corrective action by the plaintiff. Moreover, work data being entered into a company database were being reverted and conveniently highlighted as issues. Exasperated the plaintiff made sure to inform the quality team and any other relevant individual not to participate in such conducts because of the critical nature of the materials as it pertains to properly troubleshooting and mitigating quality issues. The plaintiff was also specifically targeted because of his continuous report of quality issues, issuance of corrective actions in case of engineering standards and requirements violations. The plaintiff must reiterate that he was technically forced into this interim role and conveniently made a target for internal quality and engineering procedure violators but most importantly external suppliers that were receiving re-work notifications as well as non-compliance notifications.

On May 8th, 2020 and to his surprise, the plaintiff was wrongly accused by the General Manager, Tad de Walt of not completing a set of unspecified tasks. The plaintiff vehemently denied such false allegations and request example and details of tasks not completed. The plaintiff was given none. This individual could not specify a single task that was not completed by the plaintiff. Instead, he stated that it has been reported to him that daily meetings data he communicated were not being conveyed to the quality control team. The plaintiff communicated how such was untrue. Setondji added that the interim quality manager has specified that she did not want the quality board populated because she had a project in place for having such display on a digital screen. This strange issue was closed with the General Manager requesting to

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 10

1 disregard the interim quality manager's instruction and not a single example of work or
2 assignment not completed by the plaintiff.
3     On May 11th, 2020, the plaintiff created a template to track all his assignment and
4 completion records and provided a copy to management which included human resource
5 management, operations management, and the general manager. These were the individuals
6 present in the May 8th meeting and such template was provided to them for the sake of
7 transparency and prevent false and unfounded accusations. The individuals decline wanting to
8 track and have a records of work being completing by the plaintiff and specifically stated: " They
9 were not interested in tracking or knowing the completion status of the work being assigned to
10 and completed by the plaintiff".
11     Around May 18th, 2020, the "Pro Se" plaintiff was informed by management that he was
12 being issued a safety violation warning for allegedly failing to wear safety glasses on the
13 manufacturing floor. Upon refuting and challenging such false accusations, he requested proof of
14 such violations and asked why this matter was never investigated for veracity before to issue any
15 such safety violation. The plaintiff was also never made aware of such false accusation prior to a
16 safety violation warning being suddenly issued.
17     On May 22nd, 2020 and without any notification, the plaintiff was called into a meeting
18 by the interim quality manager and informed by the human resource manager that his
19 employment was being immediately terminated. No justification, reason or explanation was
20 given to the plaintiff for this sudden termination. Upon requested further details or reasoning, the
21 plaintiff was provided none and was only instructed to sign a severance document which the
22 plaintiff declined to sign.
23     An exhibit was later provided to the plaintiff within which further acts of discrimination
24 are highlighted. In one of this reports, white employees allegedly report hours after the plaintiff

COMPLAINT FOR EMPLOYMENT DISCRIMINATION -
11

departure that the plaintiff has highlighted an issue where manufacturing inaccurately fabricate opposite parts on work orders. In this specific case and despite the facts that they were also countersink defects and opposite part marking issues on the part, this was inexplicably used to highlight technical performance concerns from the African/Black plaintiff. Not only is this absurd and a display of confusion and a lack of knowledge as it pertains to quality standards and the set of issues being encountered by the department but also did it reveal yet another significant element of racial discrimination. The "Pro Se" plaintiff was being treated differently than other white employees. As example, within 2 weeks of his arrival at the company, the plaintiff was assigned an issue and asked to contact a customer company about acceptance of a defective parts. These parts were reviewed by the company's general manager, Operations Manager, Quality Control personnel, Programmer, Engineering and all concluded that the parts were defective and requested that the plaintiff contact the customer and resolve the quality issue. It took the plaintiff approximately 10 minutes to troubleshoot the issue and highlight a misinterpretation of customer engineering requirements, design specification and drawing. The plaintiff informed the engineering and programming department that there was no defect and demonstrated to these individuals how they have misinterpreted customer requirement and provided misleading information on the manufacturing drawing. The plaintiff input led to a part manufacturing code update, engineering drawing update as well as an update to manufacturing instructions and verbal instructions to manufacturing lead and quality control personnel. This was significant. Why was no technical performance issue raised about all the individuals that provided a wrong an inaccurate expertise upon reviewing the parts in this case. No action and no complaint were made against these white employees which include the company's top management. This is racial discrimination, as other white employees are treated differently than the African/Black employee under similar/identical circumstances. Moreover, it highlights a

COMPLAINT FOR EMPLOYMENT DISCRIMINATION -
12

dangerous practice of attempting to blame a minority employee for program issues and other department issues that have nothing to do with his work due to nothing but racial hatred, ignorance, and prejudice. The irony in this example is that the plaintiff was only accurately resolving part quality issues created by other individuals and departments. In an attempt to subject the African/Black employee to stricter level of scrutiny than other white employees, LMI Washington only highlighted its own deficiencies as a manufacturing plant.

LMI Aerospace had no just cause to terminate the African/Black plaintiff's employment and provided no reason, justification, or explanation. The plaintiff was subjected to racial discrimination and treated differently than other white employees. Therefore, LMI Aerospace is liable per Title VII of the Civil Rights Act of 1964 of acts of racial discrimination and abuse against the African/Black plaintiff.

The "Pro Se" Plaintiff is an African/Black plaintiff who accepted an offer of employment from LMI Washington as a Manufacturing Engineer on December 31st, 2019. His employment started on March 2nd, 2020 and his employment was wrongfully and abruptly terminated on May 22nd, 2020. Prior to this role, Setondji V. Nahum held a position of Tools and Process Engineer I with SAFRAN Labinal, a position of Manufacturing Engineer with Sikorsky Aircraft/Lockheed Martin and a position of Manufacturing Industrial Engineer II with the Boeing Company. Setondji V. Nahum holds a Bachelor of Science in Aeronautical and Astronautical Engineering from the University of Washington and was pursuing a Master of Science in Aeronautics from Embry-Riddle Aeronautical University with a present a 4.0 GPA.

Setondji V. Nahum was satisfactorily performing the interim quality role that the company forced him into and requested that he temporarily filled. Setondji successfully highlighted and resolved multiple engineering and manufacturing issues through problems presented to him through quality problems. When other departments such as contract, customer

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 13

service, and accounting reported issues pertaining to data entry into a company database, Setondji not only took it upon himself to research and resolve the issue but also investigated the occurrences and communicated to these teams and the company's General Manager that the database was corrupted and data entered was being automatically deleted. Setondji provided specific cases and provided print screen to highlight these strange occurrences.

Setondji never had the opportunity to even start the job/position for which he was hired. Instead, the African/Black plaintiff was requested from day 1 to assist in a lower and different role as an interim until the position is filled. The role was characterized by long standing quality issues, lack of traceability and process compliance issues dating as far back as 3 years before the arrival of the plaintiff. Setondji never understood why other white employees at the company could not have taken on this role while he focusses on getting acquainted with the company and completing tasks within the scope of the position for which he was actually hired. The interim position he was technically forced into consisted cleaning up numerous issues (Red Tags) with no traceability. None of Setondji V. Nahum never understood why none of his white co-workers were asked to work these specific issues and specific quality problem cases. Setondji cleaned up the backlog of issues that were sitting prior to his arrival within 3 weeks only to be furlough immediately after. He was asked to return to work on April 20th, 2020 after approximately 3 weeks of furlough within which he was told by the general manager and human resource personnel to file for unemployment. Upon his return, yet another backlog of issues with no traceability was piled up for his review. Setondji yet again cleaned up these issues and finalized a backlog tracking sheet to address traceability, manufacturing, and engineering issues.

Throughout his employment, the African/Black plaintiff was treated very differently from other white employees. Not only were other white employees not requested to clean up the type of quality issues that the plaintiff was being required to complete, but also was the plaintiff being

COMPLAINT FOR EMPLOYMENT DISCRIMINATION -
14

Pro Se 7 2016

unfairly blamed for quality and system issues that were ironically being caused by other parties and being assigned to the plaintiff for the determination of a solution. The plaintiff was being a subject of sabotage, theft, and incomprehensible sudden displacement of necessary work materials. Other white employees were meddling with critical work input data after the completion of analysis and issuance of corrective action by the plaintiff. Moreover, work data being entered into a company database were being reverted and conveniently highlighted as issues. Exasperated the plaintiff made sure to inform the quality team and any other relevant individual not to participate in such conducts because of the critical nature of the materials as it pertains to properly troubleshooting and mitigating quality issues. The plaintiff was also specifically targeted because of his continuous report of quality issues, issuance of corrective actions in case of engineering standards and requirements violations. The plaintiff must reiterate that he was technically forced into this interim role and conveniently made a target for internal quality and engineering procedure violators but most importantly external suppliers that were receiving re-work notifications as well as non-compliance notifications.

On May 8th, 2020 and to his surprise, the plaintiff was wrongly accused by the General Manager, Tad de Walt of not completing a set of unspecified tasks. The plaintiff vehemently denied such false allegations and request example and details of tasks not completed. The plaintiff was given none. This individual could not specify a single task that was not completed by the plaintiff. Instead, he stated that it has been reported to him that daily meetings data he communicated were not being conveyed to the quality control team. The plaintiff communicated how such was untrue. Setondji added that the interim quality manager has specified that she did not want the quality board populated because she had a project in place for having such display on a digital screen. This strange issue was closed with the General Manager requesting to

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 15

disregard the interim quality manager's instruction and not a single example of work or assignment not completed by the plaintiff.

On May 11th, 2020, the plaintiff created a template to track all his assignment and completion records and provided a copy to management which included human resource management, operations management, and the general manager. These were the individuals present in the May 8th meeting and such template was provided to them for the sake of transparency and prevent false and unfounded accusations. The individuals decline wanting to track and have a records of work being completing by the plaintiff and specifically stated: " They were not interested in tracking or knowing the completion status of the work being assigned to and completed by the plaintiff".

Around May 18th, 2020, the "Pro Se" plaintiff was informed by management that he was being issued a safety violation warning for allegedly failing to wear safety glasses on the manufacturing floor. Upon refuting and challenging such false accusations, he requested proof of such violations and asked why this matter was never investigated for veracity before to issue any such safety violation. The plaintiff was also never made aware of such false accusation prior to a safety violation warning being suddenly issued.

On May 22nd, 2020 and without any notification, the plaintiff was called into a meeting by the interim quality manager and informed by the human resource manager that his employment was being immediately terminated. No justification, reason or explanation was given to the plaintiff for this sudden termination. Upon requested further details or reasoning, the plaintiff was provided none and was only instructed to sign a severance document which the plaintiff declined to sign.

An exhibit was later provided to the plaintiff within which further acts of discrimination are highlighted. In one of this reports, white employees allegedly report hours after the plaintiff

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 16

*Pro Se 7 2016*

departure that the plaintiff has highlighted an issue where manufacturing inaccurately fabricate opposite parts on work orders. In this specific case and despite the facts that they were also countersink defects and opposite part marking issues on the part, this was inexplicably used to highlight technical performance concerns from the African/Black plaintiff. Not only is this absurd and a display of confusion and a lack of knowledge as it pertains to quality standards and the set of issues being encountered by the department but also did it reveal yet another significant element of racial discrimination. The "Pro Se" plaintiff was being treated differently than other white employees. As example, within 2 weeks of his arrival at the company, the plaintiff was assigned an issue and asked to contact a customer company about acceptance of a defective parts. These parts were reviewed by the company's general manager, Operations Manager, Quality Control personnel, Programmer, Engineering and all concluded that the parts were defective and requested that the plaintiff contact the customer and resolve the quality issue. It took the plaintiff approximately 10 minutes to troubleshoot the issue and highlight a misinterpretation of customer engineering requirements, design specification and drawing. The plaintiff informed the engineering and programming department that there was no defect and demonstrated to these individuals how they have misinterpreted customer requirement and provided misleading information on the manufacturing drawing. The plaintiff input led to a part manufacturing code update, engineering drawing update as well as an update to manufacturing instructions and verbal instructions to manufacturing lead and quality control personnel. This was significant. Why was no technical performance issue raised about all the individuals that provided a wrong an inaccurate expertise upon reviewing the parts in this case. No action and no complaint were made against these white employees which include the company's top management. This is racial discrimination, as other white employees are treated differently than the African/Black employee under similar/identical circumstances. Moreover, it highlights a

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 17

dangerous practice of attempting to blame a minority employee for program issues and other department issues that have nothing to do with his work due to nothing but racial hatred, ignorance, and prejudice. The irony in this example is that the plaintiff was only accurately resolving part quality issues created by other individuals and departments. In an attempt to subject the African/Black employee to stricter level of scrutiny than other white employees, LMI Washington only highlighted its own deficiencies as a manufacturing plant.

LMI Aerospace had no just cause to terminate the African/Black plaintiff's employment and provided no reason, justification, or explanation. The plaintiff was subjected to racial discrimination and treated differently than other white employees. Therefore, LMI Aerospace is liable per Title VII of the Civil Rights Act of 1964 of acts of racial discrimination and abuse against the African/Black plaintiff.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

**IV.   EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES**

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

07/29/2020

1   B.      The Equal Employment Opportunity Commission *(check one)*:

2           ☐   has not issued a Notice of Right to Sue letter.
3           ☒   issued a Notice of Right to Sue letter, which I received on *(date)*
4           09/08/2020

5   *(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

6   C.      Only litigants alleging age discrimination must answer this question.

7   Since filing my charge of age discrimination with the Equal Employment Opportunity

8   Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

9           ☐   60 days or more have elapsed.
10          ☐   less than 60 days have elapsed.

11                          **V.     RELIEF**

12  *State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.*

15  The plaintiff requests back pay, front pay, lost benefits, out-of-pocket losses, pain and suffering,

16  injunctive relief, punitive damages, and attorney's fees and costs and any other relevant

17  compensation as stated by jurisprudence. ( if any)

18

19                  **VI.    CERTIFICATION AND CLOSING**

20  Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my

21  knowledge, information, and belief that this complaint: (1) is not being presented for an improper

22  purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

23  (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or

24  reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so

Pro Se 7 2016

identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10/09/2020

Signature of Plaintiff: *(signed)*

Printed Name of Plaintiff: SETONDJI VIRGILE NAHUM.

Date of signing: _____

Signature of Plaintiff: _____

Printed Name of Plaintiff: _____

Date of signing: _____

Signature of Plaintiff: _____

Printed Name of Plaintiff: _____

COMPLAINT FOR EMPLOYMENT DISCRIMINATION - 20