UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SETONDJI VIRGILE NAHUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20 CV 1524 RWS |
| | ) | |
| LMI AEROSPACE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Setondji Virgile Nahum ("Nahum") brings this employment discrimination suit against his former employer, LMI Aerospace, Inc. ("LMI"), and three managers at the company, Tad DeWalt ("DeWalt"), Beverly Green ("Green"), and Brandy Hagedorn ("Hagedorn"). Nahum alleges that the defendants discriminated against him because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981. He filed his original pro se complaint on October 22, 2020 alongside a motion to proceed in forma pauperis. I granted the motion on December 23, 2020 and instructed Nahum to file an amended complaint containing clearer, more specific factual allegations. He did so on January 19, 2021. I dismissed the Title VII claims he brought against the three managers on February 11, 2021. The defendants now move to dismiss the rest of Nahum's claims under Federal Rule of Civil Procedure

1

12(b)(6). For the reasons explained below, I will grant the motion in part and deny it in part.

## BACKGROUND

Nahum, who describes himself as "African/Black," received an offer of employment at LMI in Washington, Missouri on December 31, 2019. He was hired as a Manufacturing Engineer and began work on March 2, 2020. His employment ended nine weeks later, on May 22, 2020.

Nahum alleges that he did not do the type of work generally associated with the Manufacturing Engineer position. Rather, he contends that he was "forced into a lesser quality control role" by managers at the company, including General Manager Tad DeWalt and Human Resources Manager Brandy Hagedorn. Nahum was instructed to perform these quality control tasks "temporarily and on an interim basis out of a company need due to multiple sudden departures from their quality team." He performed these tasks for the entirety of his tenure at LMI. None of Nahum's coworkers were ever assigned to work on these kinds of tasks.

Nahum finished the initial quality control tasks in approximately three weeks. He was then furloughed for three weeks and instructed to file for unemployment during this time. He was asked to return to work on April 20, 2020 and was assigned more of the same kind of tasks to complete. When he returned, he found that "[c]ritical work data such as work packet, certifications, and parts were being

2

suddenly and incomprehensibly displaced from [his] office before completion of relevant assignment and tasks," and "[c]ritical work input data were being meddled with." Nahum reported these issues to the quality team "and other relevant individuals." He was "directly blamed and rendered responsible" for the issues, and the company did not investigate the employees whom Nahum believed to be responsible.

In a meeting on May 8, 2020, DeWalt, Hagedorn, and Operations Manager Chris Lager informed Nahum that he had not completed certain tasks. Nahum maintained he had finished the work and when he asked the managers to identify specific tasks he had not completed, they declined to provide him with details. According to the complaint, DeWalt told Nahum that "[o]ther white employees from quality reported that daily meetings data he communicated were not being conveyed to the quality control team."[1] Nahum disputed this allegation. He also explained that he had been following instructions from Interim Quality Manager Beverly Green. As a result of this conversation, Nahum created a template to track the work he completed. He sent copies to DeWalt, Hagedorn, Lager, and Green, but they apparently declined to review them.

---

[1] This statement appears in quotes in the complaint, but it is not clear whether this is the exact language that DeWalt used.

On or around May 18, 2020, Green informed Nahum that "an unspecified employee" had filed a "random report" against him, alleging that he had failed to wear safety glasses on the manufacturing floor. Although Nahum maintained that he did not commit this violation, Green informed him that he would receive a warning for breaking safety protocol. A few days later, on May 22, 2020, Nahum was called into a meeting with DeWalt, Hagedorn, and Green. At this meeting, he was told that his employment was being immediately terminated. He was not provided with an explanation for the termination.

On July 29, 2020, Nahum filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"). In the EEOC complaint, he alleged that he was terminated based on race and that the terms and conditions of his employment differed from those of similar employees.[2] The EEOC issued a Notice of Right to Sue on September 8, 2020. Nahum then filed suit in this Court.

## LEGAL STANDARD

### Rule 12(b)(6)

In ruling on a motion to dismiss under Rule 12(b)(6), I must accept as true all factual allegations in the complaint and view them in the light most favorable to the

---

[2] Additionally, in the EEOC complaint, Nahum referenced another charge that he filed against a previous employer, The Boeing Company. That case appears to be Nahum v. Boeing Company, 2020 WL 7695691 (W.D. Wash. Dec. 28, 2020) (granting Boeing's motion for summary judgment, case pending appeal before the Ninth Circuit).

plaintiff. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). The federal rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a plaintiff need not provide "detailed factual allegations" but must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**Pro Se Pleading Standard**

Because Nahum is a pro se litigant, his complaint is entitled to liberal construction. However, he "must still allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). See also Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) ("Although we view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law") (citations omitted).

## ANALYSIS

### I. Title VII

It appears that Nahum has alleged that he was discriminated against in two respects: (1) that he was terminated on account of his race, and (2) that the terms and conditions of his employment differed from other similarly situated employees of different races. Because he has not alleged direct evidence of racial discrimination, I must analyze his claims under the framework established in McDonnell Douglas

5

Corp. v. Green, 411 U.S. 792 (1973). To make a prima facie Title VII discrimination case, Nahum must show that he (1) is within the protected class, (2) was qualified to perform his job, (3) suffered an adverse employment action, and (4) has facts that give rise to an inference of discrimination. Takele v. Mayo Clinic, 576 F.3d 834, 838 (8th Cir. 2009) (citations omitted). "Although it is not necessary for an employment discrimination plaintiff to plead the elements of the prima facie case to withstand a motion to dismiss for failure to state a claim, some facts are necessary to establish the existence of a plausible claim." Pointer v. Walmart Corp., 2019 WL 2869905, at *2 (E.D. Mo. July 3, 2019) (citing Erickson v. Pardus, 551 U.S. 89, 93 (2007)).

An adverse employment action is defined as "a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects." Jackman v. Fifth Judicial Dist. Dep't. of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013). "[M]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." Id.

Nahum has alleged that he is Black and that his managers and all of the other employees were white; that he was instructed to complete tasks that a Manufacturing Engineer typically would not be assigned; that he was the only employee at LMI

who had to do this type of work; that his work was sabotaged by other employees; and that he was ultimately fired after nine weeks of employment. LMI argues that Nahum did not suffer any material change in his employment status and thus did not experience an adverse employment action within the meaning of Title VII because he did not allege that his salary or benefits were impacted or that he received a reduction in title because he was assigned this other work. To be sure, "[a] materially adverse action must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006) (citations and internal quotation marks omitted). Thus, if Nahum merely disliked working on the tasks he was assigned or felt that he was overqualified for the work, that would not be sufficient to state a claim under Title VII. However, at this stage in the litigation, the facts that Nahum has alleged, coupled with the specific allegation that he "was subjected to a higher level of scrutiny than other white employees" and fired because of it, is sufficient to state a claim that he suffered an adverse employment action.

LMI also argues that even if Nahum did suffer an adverse employment action, he has not alleged facts sufficient to support an inference of racial discrimination. Disparate treatment occurs "where an employer has 'treated [a] particular person less favorably than others because of' a protected trait," and a disparate treatment plaintiff "must establish 'that the defendant had a discriminatory intent or motive'

7

for taking a job-related action." Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (internal citations omitted). One way to demonstrate an inference of racial discrimination in disparate treatment cases is by showing that "similarly situated employees outside the protected class were treated differently." Gibson v. Am. Greetings Corp., 670 F.3d 844, 854 (8th Cir. 2012) (citation omitted). To be "similarly situated," the employees "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000). Nahum has alleged that he was the only employee who had to perform the quality control tasks that he was assigned. The complaint does not specify how many other Manufacturing Engineers were employed at LMI, how long they had been working there, or the type of work that they were assigned. However, viewing the complaint in the light most favorable to Nahum, and remaining mindful of his pro se status, I find that these allegations could support an inference that Nahum was treated differently than other similarly situated employees on account of his race. While discovery may ultimately reveal that Nahum was not assigned the quality control tasks or fired on account of his race, the facts that he has alleged in the complaint are sufficient to survive the motion to dismiss.

## II. § 1981

42 U.S.C. § 1981 "prohibits racial discrimination in 'all phases and incidents' of a contractual relationship;" however, it "does not provide a general cause of action for race discrimination." Gregory v. Dillard's, Inc., 565 F.3d 464, 468 (8th Cir. 2009) (internal citations and quotation marks omitted). In the Eighth Circuit, courts "apply the same analysis to claims of discrimination and retaliation under Title VII and 42 U.S.C. § 1981." Takele, 576 F.3d at 838 (citations omitted). To make out a prima facie case of discrimination under § 1981, the plaintiff must show (1) that he belongs to a protected class, (2) that the defendant intended to discriminate on the basis of race, and (3) that the discrimination interfered with an activity protected by the statute. Harris v. Hays, 452 F.3d 714, 718 (8th Cir. 2006). Nahum has brought § 1981 claims against LMI and all three managers.

"[A] defendant's personal liability under § 1981…requires proof of intentional discrimination *by that defendant*." See Ellis v. Houston, 742 F.3d 307, 327 (8th Cir. 2014) (Loken, J., concurring) (citations omitted). Nahum has alleged that all three managers are white and that he is Black. He has not stated any other facts related to race or racial discrimination. He alleges that DeWalt and Hagedorn asked him to perform the quality control tasks. He also alleges that DeWalt and Green blamed him for quality control issues that were not his fault; that Green informed him he had incurred a safety violation for failing to wear safety glasses on

the manufacturing floor; and that all three of the managers were present at the meeting when he was fired. Neither the complaint nor the EEOC charge contain any other specific allegations from which I could infer that any of the managers engaged in behavior motivated by racially discriminatory intent. As a result, Nahum has not stated claims against any of the managers under § 1981.

As for the § 1981 claim against LMI, the claim can go forward for the same reasons as the claim under Title VII.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants' motion to dismiss, [15], is **GRANTED** with respect to the § 1981 claims against Tad DeWalt, Beverly Green, and Brandy Hagedorn, and **DENIED** with respect to the Title VII and § 1981 claims against LMI Aerospace, Inc.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 28th day of June, 2021.